Mobis v. Autoliv, same parties, just reverse in terms of who is the appellant and who is the appellee. This is case number 161896. So Mr. Hughes, you want four minutes for rebuttal? I have it. Thank you, Your Honor. This case involves just a simple claim of legal error, which is that the board applied the wrong test for obviousness that applied to narrow the test. Now I think significant aspects of this appeal are undisputed, and that as a result, addressing these undisputed issues first will help narrow the scope of what's really before the court, because I think it's quite a bit narrower than appears on first blush. It's undisputed that as a general matter, the combination of the Inouye reference and of an airbag and a drawstring, NARIN provides the cinch tube apparatus. The board in its institution decision found that this was an obvious combination to make. For example, is that appendix page 1158? Well, they didn't find that. They found that there was a sufficient basis to institute. They didn't find obviousness. Yes, Your Honor. They found that there was a sufficient basis to institute on this, but in their final decision, they never backtracked or challenged or never said that there was any reason to depart from that reasoning. They don't have to do that. Our case law is very clear on that. I understand, Your Honor. They don't have to do that. What I'm saying is the issue before the court is not whether or not that combination is obvious, because that, I think, was something at the very least the board assumed that it just didn't have to decide because it decided this case on a far narrower ground. And I'm just trying to demonstrate that the narrower ground is all that's before the court here. And that narrower ground is... So the combination of using the Inouye general structure of the airbag with the cinch tube of NARIN, that's not the question before the court. The question is when that combination is made, when the airbag deploys without obstruction, does the terminal end of the cinch tube, is it drawn within the airbag or does it remain outside of the airbag? Do you rely on anything other than Balavich's testimony on that point? That's our key piece of factual evidence, yes, Your Honor, is Ms. Balavich's testimony. Isn't your real problem here that there's also expert testimony on the other side that says the opposite? There is... I mean, we're on a substantial evidence review. I mean, you may be right that this is actually the way these things do operate, but the board found otherwise based upon their expert. And you're not challenging the admission of that testimony or the like, so I don't see what we can do. Your Honor, that factual determination, I think, is subsequent to the legal question that we're raising. The legal question that we're raising is the board went in search of a strict, is there a teaching suggestion or motivation? Relying on that testimony, they said there isn't a teaching suggestion or motivation, and that's where it ended its analysis. Our principal contention is that the board truncated its analysis too soon, that what the board needed to look for is whether or not there would be a rationale for a person of ordinary skill in the art to conceive of the combination. Typically, that would be done via a teaching suggestion or motivation. Here, however, there were additional ways that that rationale could have been reached that are apart from that evidence. The first is that there were a finite number of options. There are only two ways. Either the thing ends up in the outside or the inside. This is all the stuff that you came up with in your reply brief, right? We discussed this argument in our reply brief, but this was articulated throughout, Your Honor, both the finite number as well as the obvious design choice. So, for example, the finite number of choices, that was at page three of our statement of issues. It was at page 17 where we discussed at length that there are only two identified predictable structures and results. We had it at page 25 of our opening brief in the summary. Did you argue this to the board that whether it was inside or outside was a design choice? Yes, Your Honor. So, to the board at pages 1658 and 1663 of the appendix, we identified that there were a finite number of choices, that there are only three possibilities. Did you provide any expert testimony or anything that suggested it didn't matter whether it was inside or outside? Well, yes, Your Honor. Ms. Balavich did testify quite clearly that she doesn't see any functional basis for this. Her testimony is that it didn't matter if it was on the outside or the inside, that the length of the drawstring was completely irrelevant. Now, also to the board at pages 1656 to 1658, we explained that there was no functional bearing on the claimed apparatus as to whether or not it was on the outside or the inside. So, this is an argument we've been making consistently. Your problem is that in its analysis, the board looks at your expert's testimony and says that at the bottom of 21, that she concedes the pulling action of the in-way drawstring inside the airlock. They will not necessarily cause the end of the cinch tube and so on. And then they say that she's contradicting her original testimony and then we weigh it. So, a few things about that, Your Honor. That does go to, as I said, I have really three separate arguments before the court. My finite option argument, my arbitrary design choice argument, and my factual argument that the straightforward combination would yield that. Your Honor's point, that goes to my third argument, my factual argument that the straightforward combination. Now, the court did look to Ms. Balavich's testimony where she said that wouldn't necessarily be so. The basis of that testimony, though, was a prior question where she was asked, could there be a way in which the combination could be made in which the cinch tube would not be pulled inside the apparatus? And she said, well, there could be ways if you lengthen the string. And that's where, in the opening brief, we discussed that as the modified Inui-Narin combination and we had a lengthy discussion of that in the opening brief. But her straightforward testimony was making the combination between Narin and Inui without doing any sort of rejiggering of the length of the drawstring would yield something that was on the inside. But at the very least, what this goes to show is when you're in the course of making that combination, a person of ordinary skill in the art would at least conceive of the different options as to whether or not you draw the thing inside or you leave the thing on the outside. Because this whole process of going through and modifying the combination based on the length of the drawstring is going to trigger one of ordinary skill in the art to think about what are the two possible options here and that's why that only, I think, in our view, confirms the obviousness analysis. So, yes, her testimony did come that way, but I don't think that actually has a bearing on the ultimate question. As to the first two questions, the finite number of design choices, as well as that this is being an arbitrary design decision, again, there's just simply no material evidence that this has any functional benefit, that it solves any stated problem, that it produces any unexpected result. Now, I believe Judge Hughes identified Dr. Hellman's testimony where he asserted that there could be some benefit to doing this and that it aids the cinching function. But the evidence here is quite clear. We just dispute that as an evidentiary matter because the evidence is quite clear in Narin and elsewhere that that benefit for decoupling the cinching function, the closing of the vent from the pressure that's placed on the airbag, is accomplished wholly by the use of the cinch tube. And that's described in Narin at great length. There is no basis in the expert report or anywhere else that there's a warrant for the claim that pulling it internally has any bearing on accomplishing that function. And so we do think that it's error to rely on any sort of conclusory statement that doesn't have any supporting detail as to why that statement is, in fact, accurate. So, again, we recognize that that statement was made. We don't think it has any bearing on this dispute because there's no explanation or warrant as to why it's correct. You're having a bit of a hard time here because here you're trying to tell us not to rely on a conclusory expert. And in the last case, your opponent's telling us not to rely on a conclusory expert testimony. I mean, I think, you know, if experts say something and there's no challenge to what they say, as long as it's not completely incredible, it should be able to be substantial evidence. Shouldn't it? Well, you know, I think there is a difference as to whether or not there's a warrant that's given. And I submit that our expert that we relied on, Ms. Balovich, we're talking about the same experts, did provide warrants and explanations as to why that's correct. But, Your Honor, I think here the point was simply there was no basis, in fact, for saying that there was any kind of benefit or unexpected or surprising result of pulling the tube internally. But it's your burden to show that. It's not their burden to show that. It's your burden to show that, isn't it? Well, we have, and we have shown that, Your Honor, because Ms. Balovich, there is competing expert testimony here where she says, I don't understand the distinction between it because there's no functional basis. There's no functional benefit of pulling the tube inside versus leaving the tube on the outside. That's her consistent testimony. So there is contradictory testimony here that says there's no functional benefit that actually flows from this claimed limitation. There was nothing that was identified in the specification. To the contrary, the specification says that you can do it either way. The specification says you can pull it internal or you can leave it external and you can have an external closing. The specification is crystal clear that either option is perfectly sufficient and there was no benefit or motivation that was identified in the specification as to one of the two options. The only reason this limitation came into the claims is because the initial application was disallowed by the Patent Office and they had to amend these claims in order to circumvent prior art. But there was never any identified basis. Well, I mean, we're supposed to be looking at the limitations that are in the claims. I mean, they have to live with them, rise or fall on them for purposes of infringement, but you're going to have to live with them for purposes of obviousness too.  Those are, Your Honor. But if the limitation is one that is just a finite number of two or three options and KSR instructs that one ordinary skill in the art... But Hellman specifically testified that they weren't, that it was a more sophisticated design choice than your expert was making out. Well, I'm not sure that that's a credible piece of testimony, Your Honor, because here it's quite clear, even from their specification, that the two options are the thing closes on the outside or the thing comes into the inside. I think his testimony, he suggests that it takes some sophistication in order to construct how it closes on the inside. Again, we don't think that there's a great deal of credibility to that. But beyond that, the problem with it is it doesn't undermine the point that there are only two possible options. But beyond that, even if it wouldn't be readily apparent to someone, when it's an arbitrary design choice, that's the sort of thing that can't render a claim non-obvious because it's arbitrary. Anyone can identify a piece of prior art and then make an arbitrary modification to it that wouldn't have been expressly discussed in the prior art. You could paint a particular piece, you know, a turquoise green color and claim that. But if it has no functional basis, if it's only the sort of thing that's a design feature, something that's wholly non-functional, the court's cases have been quite clear that that can't be the basis of demonstrating non-obviousness. So I think the court's decisions in Cooley and Rice are clear on that. Similarly, the court's recent decision in ACCO Brands, I think is directly on point. There the court was confronted with a paper shredder that had two sensors, a thickness sensor and a presence sensor. The question was, what order do those sensors need to be put in? The prior art showed them being put in one order. The court found it obvious to do them in reverse order without finding of any motivation or anything along those lines because it was just clear that there were only two ways of doing it and it had no basis bearing on function. A person of ordinary skill in the art would understand how to make that combination without any further showing. And again, that was the legal – the board truncated its analysis on obviousness too quickly by not going through those further steps of understanding obviousness. I'll save my time. Thank you. May it please the court. Good morning, Your Honors. Keith Pearls on behalf of the Appellee. I will leave in this appeal. First of all, I want to start out replying to the argument about the board making findings in the institution decision that now the appellant is attempting to rely on in this appeal. As Judge O'Malley pointed out, nothing in the institution decision binds the board. That was made clear as late as the Trivascular case last year. And so although appellant would like to say this is a more narrow ground of appeal, we believe there's sufficient evidence and sufficient basis to say that there's no motivation to combine here as well as no motivation to combine and make the changes to reach the claim to invention. It was Moses' burden to show that one of ordinary skill in the art would have been motivated to combine the Anu and Aaron references to achieve the claim to invention and would have had a reasonable expectation of success in doing so. Because there is substantial evidence supporting the board's inclusion, Mobus has changed theories on appeal in its reply brief and attempts to convince this court that it essentially should adopt a new standard for obviousness. So I want to first address the factual findings that the board made with respect to the Anu-Aaron combination and those references and then address Mobus' new theory. Again, we're under the substantial evidence standard of review here. With respect to obviousness, the board undertook a thorough analysis of the within the interior limitation, which is the critical limitation here on appeal. It first looked closely at the differences in the prior art and the claim to invention. And the board found that with respect to Naren, nothing in Naren or Anu describes or suggests pulling the terminal end of a cinch tube partially within the airbag interior as required by the claims. In fact, the board found that Naren works the exact opposite manner of the claimed invention because the Naren nozzle actually expands away from the airbag as the airbag is deploying, whereas the claimed invention pulls the terminal end of the cinch tube toward the airbag interior. So what's the benefit of the internal closure? Your friend on the other side wanted to hit really hard on that. Sure. The benefit of the internal closure, again, we don't have the burden to show any benefit. An inventor doesn't even have the burden to put the benefit in the patent. But the benefit here is our expert looked at this and he said, the benefit here is that it assists in closing the terminal end. So once you pull that terminal end within that airbag and it's deploying quickly, it actually essentially works as a suction. So when it pulls in, it then assists in closing the cinch tube. So that is the benefit. And their expert said, I don't really understand what the benefit is here. So basically you have the two experts disagreeing, one saying, I don't understand the benefit, and our expert saying, well, I fully understand the benefit with hindsight. When I look at this, I believe the inventors did it for this reason. So the board started out by considering. But that, of course, is only one option that's disclosed, right? I'm not sure I understand the question, Judge O'Malley. Well, I mean, the argument is that you're saying it could be either or. Well, it's not either or. I think it depends on what you mean by either or. The testimony here is you could design myriad number of airbags to close on the outside because we're dealing with the force rushing during deployment. And so the testimony is to turn that terminal end and pull it within the interior requires much more force than simply cinching on the outside. And that's important because with respect to the ANEW reference, what the board found was ANEW actually teaches it's the cinched hole. And what ANEW teaches is you never actually close the hole fully because what happens is in airbag design, you deal with this ride-down effect. Because what you don't want to happen is when an airbag deploy, the person bounces off of it like a rock skipping off a pond. And so you have to deal with the ride-down effect. And so you want the airbag to ride down as the person is engaging the airbag. And so the way ANEW does that, it actually teaches leaving that hole partially open. Now, if you combine that with the fact that it requires more force to pull that terminal end within the interior of the airbag to keep it out, well, one ordinary skill in the art would never look at ANEW and combine it with NARIN and say, okay, I want to put this nozzle on this new airbag and turn that terminal end and pull it within and close it. Because, again, ANEW teaches leaving that hole open for purposes of ride-down to address that issue. What's your response to the argument that, well, this is all well and good, but it's still an arbitrary design choice? Well, the arbitrary design choice argument is an interesting one because it relies on two embodiments. The one disclosed of closing on the outside and the one disclosed of closing on the inside. Well, Judge O'Malley, as you pointed out, that is classic patent prosecution. You start out claiming the broadest invention you can and then when the examiner rejects it, you amend your claims. And so what happened is how can it be arbitrary when the pictures show that it's pulling within, all the operative pictures show that it's pulling within, the prosecution history shows that claims were amended to argue over prior art talking about that. And the claim language has that. So it certainly can't be arbitrary. It's a limitation of the claims, as you pointed out, Judge O'Malley. Well, it can be arbitrary if it has no functional purpose. Well, but again, Judge Hughes, we're under the substantial evidence standard. No, I understand that. And it doesn't seem to me that they've met their burden of showing that it has no functional purpose. But just the fact that it's different during the claim prosecution doesn't quite do it on this review. You still have to show that, or they have to show that it's not functional. But we're asking you, I mean, did you show, I guess you've identified some arguments about why it actually is a design, not just a design choice, but a functional choice. That's correct. That's where our expert said he looked at this and he said it helps closing the terminal end of the tube on the inside of the airbag. And that's the functional purpose. And he went beyond that and said, this was against conventional wisdom at the time, which we know because all the art was closing on the outside. And he said no one would design it this way because you're dealing with more force. And so you're going to have to reinforce the stitching. You're going to have to have the nozzle to blow harder. You're going to have to have fabric so it doesn't blow out because you're trying to pull this terminal end of this tube within this airbag opening. So all of those factors together, along with the advantage, shows that this wasn't simply an arbitrary design choice and certainly is supported by substantial evidence in the board's conclusion. Now, we submit that because MOBIS knows that it's supported by substantial evidence, they're actually changing theories on appeal of obviousness. And what they say is they want this court to believe that in an obvious design choice case, and in those types of cases, petitioners are not required to show a motivation to combine. Well, they're wrong on both counts. As an admissional matter, they've waived this argument because we saw it for the first time in their reply brief. But even beyond that, MOBIS' new theory is it's contrary to this court's longstanding precedent. KSR even made clear that showing a motivation to combine is an important requirement of obviousness. And this court said in 2015 in Belden v. Burkteck, quote, obviousness concerns whether a skilled artisan not only could have made, but would have been motivated to make the combination. And the would have been motivated to make the combination is missing here. There is nothing in the prior art that teaches closing on the inside at all. And there's no motivation to combine the Anu and Naren references to make that combination. And also, none of the cases that they actually rely on in their reply brief support the theory that this court has ever departed from requiring a motivation to combine. For example, they cite the Burroughs case. Well, the Burroughs case is a conception case. It has nothing to do with obviousness. They cite the Shire case in their reply brief. But that case, Shire says, quote, for a patent to be obvious, some kind of motivation must be shown so that the jury can understand why a person of ordinary skill in the art would have either thought of combining two or more references or modifying one to achieve the patent intervention. And to be clear, the test is no different for, quote, unquote, obvious design choice cases. This court still goes through the typical obvious analysis in those kinds of cases. But to be clear, the 450 patent is not an obvious design choice. For example, in the Enri Chiu case, which is an obvious design choice case that they rely on in their reply brief, the court made clear, where there is no teaching or suggestion in the prior art that would leave one of ordinary skill in the art to modify the prior art to achieve the claimed invention, the claimed invention cannot be the result of an obvious design choice. The court also noted in Chiu that the patentee in that case had presented evidence that the claim structure and its function were different from the prior art, which indicated that Chiu's claim design could not be an obvious design choice. Well, we've got similar evidence in this case. The configuration of pulling within requires a more sophisticated design to overcome the additional forces of pulling within, including, again, like I indicated earlier, the size and shape of the airbag, the materials and structure of the airbag, the nozzle configuration. All of those are different structural considerations you have to take into account to pull within the interior versus closing on the outside. Mr. Chiu's also relies on the Acklebrand's case. Well, the Acklebrand's case, again, was an obvious design choice case, but the court engaged in the typical obviousness analysis in that case. The patent claimed a shredder that prevents paper jams using a combination of two sensors, a present sensor and a thickness sensor. The patent also claimed a controller that only turned the shredder on when the present sensor indicated that paper was present and the thickness sensor detects that the paper in the feed does not exceed the shredder's maximum capacity. This court, correctly reversing the board, found that the examiner in that case hadn't made a prima facie showing of obviousness because all of the elements of the claim invention were in the prior art. The prior art also provided the motivation to combine, and it was the same motivation to combine, solving the same problem as the patent, cutting the motor after too much paper was detected in the shredder to avoid wear on the motor. So all of the prior art elements were there in the claim invention as well as the motivation to combine. Now, you compare that to this case. The claim structural design of the airbag in this case and its function is found nowhere in the prior art and MOBA's presented no evidence that showed one ordinary skill in the art would have modified the prior art to achieve the claim invention. So it simply cannot be an obvious design choice under an obviousness analysis here. Now, the other argument that I want to make or address that Mr. Hughes made is this decoupling argument. He suggests that Naren provides this decoupling motivation. Well, if you look at the prosecution history of the patent, the decoupling argument with respect to Naren was made in relation to element, I'm going to call it 1D, but it's the next to the last element, whereas 1E, the last element of the claim, is the element that we're talking about here. So the decoupling argument was made with respect to the language of element 1D and it appears without necessitating closure of the base end of the cinch tube. And so that argument in prosecution, Naren wasn't in prosecution, but that argument was made about that distinction point with respect to element 1D. With respect to element 1E that we're talking about here today, the claim language was added to say pulling within and it was distinguished over the prior art saying nothing in the prior art pulls within and that would not have been something that would have been intuitive to one of ordinary skill in the art at the time because you're pulling in and pulling in has to overcome those additional forces of pushing the airbag during deployment out and so pulling that terminal end is different than the prior art. So that argument about decoupling was not made with respect to element 1E, it was made with respect to element 1D. So at the end of the day, your honors, what MOBIS is asking the court to do is depart from the typical obviousness analysis because what it believes is it believes this is a simple invention. But we would urge the court to engage in the standard obviousness analysis and along with the substantial evidence standard affirm the board's decision. Unless you have any questions, that concludes my presentation. Thank you. Thank you. Thank you. Thank you, your honors. I'll just make two brief points. The first point is that this, our fundamental point is a legal question that the board made in error of law. Now, Judge Hughes mentioned that we hadn't met our burden of showing evidence here but I think the problem with that is because the board never engaged in the correct fact finding and that's because the board didn't realize the depth of the obviousness inquiry that it needed to undertake. Once it found no teaching suggestion or motivation, it stopped the analysis. It did not proceed to consider whether or not this was a circumstance of finite design options and it did not stop to consider whether or not that there was a lack of benefit such that the arbitrary design choice rationale would apply. So it's true that the board made no factual findings in support of us but that's because it was infected by the legal error of understanding too constricted a view of what the obviousness test requires. In this circumstance, the right result would be to reverse as a matter of law to identify the proper obviousness test that includes not just the teaching suggestion motivation but a broader search for a rationale that one would conceive of the combination and reverse to the board to consider the evidence before it under the proper legal standard that looks at all of these different factors in understanding whether or not there's a rationale to make that combination. We submit that that's the proper outcome. The second basis for decision in this case is there's still, I don't believe, any clear answer to the straightforward argument that the simple combination of Inui and Narin would result in a device where the drawstring, because of its length, would pull the cinch tube internal to the bag. The only way you result in a device where the cinch tube is on the outside at the time that the bag is fully inflated is if you add further modifications to that of lengthening the drawstring. Now, in order to make those modifications, which again Ms. Balavich said you might think to do, but in the course of making those modifications, one option that a skilled artisan would necessarily think of is the difference between the tube terminating within the bag and without the bag because to make the decision of lengthening the drawstring requires one to think about the position of the tube at the point that the bag is fully inflated. That's a separate additional reason why there would have been a clear rationale to make the combination that exists in the prior art. Again, the board failed to consider that and that's an additional basis. They specifically and explicitly considered your proposed combination. But what they didn't consider was whether in making that combination one would think along the way as one of the steps. They said one would lengthen the string in order to avoid this result. Maybe that's so, but in making the decision to lengthen the string, one would think along the way of if I don't lengthen the string I'm going to have an internal draw. So that option, that would be obvious apparent. The additional testimony is that there is no unpredictable or surprising result that would come from that. All of these things were fully predictable to one who was skilled in the art. Thank you. Thank you, Erin.